## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

JESUS MORALES MIRANDA
DORCAS NAZARIO RIVERA

      Debtor (s)
_____/

Case No. 18-03190

Chapter 11

## **FIRST PLAN OF REORGANIZATION DATED MARCH 18, 2019**

Jesús Enrique Batista-Sánchez, Esq.
## **The Batista Law Group, PSC**
P.O. Box 191059
San Juan, PR 00919
(787) 620-2856

The Debtors, Jesus Morales Miranda and Dorcas Nazario Rivera (the "**Debtors**"), propose the following Small Business Plan of Reorganization (the "**Plan**"), pursuant to 11U.S.C. § 1121. Subject to certain restrictions set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P.3019 and this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE I – SUMMARY

This Plan under chapter 11 of the Bankruptcy Code (the ("Code") proposes to pay the creditors of Jesus Morales Miranda and Dorca Nazario Rivera from cash flows generated from the business operations of the Debtors.

The Plan consists of eight (8) classes of secured claims (Class 1 to Class 8), one (1) class of unsecured claims (Class 9), and one (1) class of equity claims (Class 10). Unsecured creditors holding allowed claims will receive distributions, which proponent of this Plan has valued at approximately $12,000.00 or an estimated or approximately 2.50% distribution. In addition, this Plan also provides for the payment of administrative claims.

All Creditors and Equity Holders should refer to Articles III through Article V of this Plan for information regarding the precise treatment of their Claims. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II – DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

1. "**1111(b) Election**" shall mean the election by a Class of any Secured Claims to have their Claims treated under the Plan in accordance with the provisions of section 1111(b) of the Bankruptcy Code.

2. "**Administrative Claim**" shall mean a Claim for payment of an administrative expense of a kind specific in Section 503(b) of the Code that is entitled to priority under section 507(a)(1) of the Code, for costs and expenses of administration of the Bankruptcy Case including, without limitation, the actual, necessary costs, and expenses incurred, after the commencement of the Bankruptcy Case, of preserving Debtor' estate and operating the business of the Debtor, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement or expenses awarded under Sections 330, 331, or 503 of the Bankruptcy Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

3. "**Administrative Claims Bar Date**" shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

4. "**Allowed Administrative Claim**" shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

5.     **"Allowed Amount"** shall mean the amount of an Allowed Claim.

6.     **"Allowed Claim"** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtor with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provision of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes, pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

7.     **"Allowed Interest"** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

8.     **"Allowed Priority Tax Claim"** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

9.     **"Allowed Secured Claim"** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenging nor the amount of the Claim is challenged as provided for herein.

10.     **"Allowed Unsecured Claim"** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

11.     **"Avoidance Actions"** shall mean Claims and Causes of Action available to the Debtor pursuant §§ 329, 510, and 544 through 553 of the Bankruptcy Code. Avoidance Actions include, without limitation, (i) suits to recover any transfers made by the Debtor within 90 days of the Petition Date, to the extent the transfer was made on account of an antecedent debt to a non-insider creditor, including those payments reflected in the Debtor' Schedules, (ii) suits to recover any transfers made by the Debtor within one-year of the Petition Date, to the extent the transfer was made on account of an antecedent debt to an insider creditor, including those payments reflected in the Debtor's Schedules, and (iii) suits to recover any transfer made by the Debtor for less than a reasonably equivalent value, or to avoid an obligation incurred for less than a reasonably equivalent value, at a time when the Debtor was insolvent, rendered insolvent by the transfer or obligation, undercapitalized or unable to pay its debts as they became due, including those payments reflected in the Debtor's Schedules.

12.     "**Ballot**" shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

13.     "**Ballot Date**" shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

14.     "**Bankruptcy Case**" shall mean the Debtor's bankruptcy case, Case No. 18-03190, which is pending before the United States Bankruptcy Court for the District of Puerto Rico, pursuant to Chapter 11 of the Bankruptcy Code.

15.     "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Puerto Rico, in which Debtor's Bankruptcy Case is pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

16.     "**Bankruptcy Estate**" shall mean the estate, created pursuant to Section 541 of the Code, by the commencement of the Debtor's Bankruptcy Case and shall include all property of the Estate as defined in such Section.

17.     "**Bar Date**" shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

18.     "**Banco Popular**" shall mean Banco Popular de Puerto Rico.

19.     "**BPPR**" shall mean Banco Popular de Puerto Rico.

20.     "**Business Day**" shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in San Juan, Puerto Rico are required or authorized to close.

21.     "**Cash**" shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

22.     "**Causes of Action**" shall mean the following actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof: (a) all proceedings, commenced or to be commenced pursuant to §§ 105, 502 and 544-554 of the Bankruptcy Code (or equivalent provisions of applicable non-bankruptcy laws); (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtor, any party named or identified in the Debtor's schedules or statement of financial affairs, any pleadings filed in the Debtor's Bankruptcy Case; and (c) the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

23.     "**Claim**" shall mean a claim as defined in section 101(5) of the Bankruptcy Code.

24.     "**Class**" means a category of Holders of Claims or Debtor Interests.

25.     "**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc."*, shall mean the specific Class into which a Claim or Interest is classified pursuant to Article II of the Plan.

26.     "**Code**" or "**Bankruptcy Code**" shall mean the United States Bankruptcy Code, 11 U.S.C., 101, *et seq.*, and any amendments thereof.

27.     "**Confirmation**" shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

28.     "**Confirmation Date**" shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

29.     "**Confirmation Objection Deadline**" shall mean the date established by the Bankruptcy Court as the date by which parties in interest must file objections to the Confirmation of the Plan, if any.

30.     "**Confirmation Order**" shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtor.

31.     "**Creditor**" shall have the same meaning as set forth in Section 101(1) of the Code.

32.     "**CRIM**" shall mean Centro de Recaudaciones de Ingresos Municipales.

33.     "**Debt**" shall have the same meaning as set forth in Section 101(12) of the Code.

34.     "**Determined Value**" shall mean with respect to each of the Real Properties, the value assigned thereto in this Plan or, if the value of any Real Property is disputed by a party with standing, the value of the Real Property as determined by the Court at the Confirmation Hearing.

35.     "**Debtor**" or "**Debtors**" shall mean Jesus Morales Miranda and Dorcas Nazario Rivera, as Debtor and as Debtor in Possession.

36.     "**Disclosure Statement**" shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

37.     "**Disposable Income**" shall have the meaning set forth in 11 U.S.C. § 1325(b)(2).

38.     "**Disposable Income Account**" shall mean the account(s), if any, established by the Debtor for the benefit of holders of Class 9 Unsecured Claims. All Disposable Income for the five (5) year period, which shall commence on the Effective Date, shall be deposited in such accounts until distributed to creditors on a quarterly basis. All such accounts shall be interest bearing except that the Debtor may maintain a single non-interest-bearing Disposable Income Account from which disbursements are made if maintaining such account will, in the judgment of the Debtor, result in lower fees being assessed against the Disposable Income Account.

39.     "**Disputed Claim**" shall mean a Claim against the Debtor which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

40.     "**Disputed Unsecured Claim**" shall mean any Unsecured Claim, which is not an Allowed Unsecured Claim.

41.     "**Distribution**" shall mean the Distribution to the Holders of Allowed Claims.

42.     "**Effective Date**" shall mean the 10th day following the Confirmation Date, provided that no appeal of the Confirmation Order is pending; *provided, however,* that the

Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the notice has been filed and Debtor stipulates in writing that the Effective Date shall occur on such date.

43.     "**Equity Interests"** shall mean any and all issued or authorized common stock, stock options, and warrants to the Debtor.

44.     "**Estate Assets"** shall mean all the assets, property, and cash of the Debtor, as defined in section 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including without limitations, the Causes of Action.

45.     "**Final Distribution Date"** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

46.     "**Final Order"** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtor, if an appeal is filed and no stay has been entered.

47.     "**Fiscal Year"** shall mean the fiscal year of Debtor, which commences on the first day of January and concludes on the final day of December in the following calendar year.

48.     "**Holder"** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

49.     "**Impaired Class"** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

50.     "**Insider"** shall have the same meaning as set forth in Section 101(31) of the Code.

51.     "**Interest"** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

52.     "**IRS"** shall mean Internal Revenue Services.

53.     **"LIBOR"** shall be the London Interbank Offered Rate as published in the *WALL STREET JOURNAL* on the date the Confirmation Order is entered by the Bankruptcy Court.

54.     "**Lien"** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor, Reorganized Debtor, or any other party with standing to bring such a challenge.

55.     "**Non-ordinary Course Administrative Claim"** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

56. "**Order**" shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

57. "**Ordinary Course Administrative Claim**" shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; *provided, however,* that any due and unpaid, post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

58. "**Payment**" shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

59. "**Person**" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

60. "**Petition Date**" shall mean June 5, 2018, the date on which the Court entered the order for relief under Chapter 13 of the Bankruptcy Code.

61. "**Plan**" shall mean this Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

62. "**Plan Payments**" shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan including the payment of Nonordinary Course Administrative Claims.

63. "**Prepetition**" shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

64. "**Priority Claim**" shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

65. "**Professional**" shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses, pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Bankruptcy Code.

66. "**Property**" shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

67. "**Pro Rata**" shall mean with respect to an Allowed Claim in a given class, that same proportion that the Allowed Claims bears to the aggregate of all Allowed Claims in such class.

68. "**Pro Rata Share**" means as to any Allowed Class 9 Unsecured Claim as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of: (i) the numerator of which is the amount of such Allowed Class 9 Unsecured Claim; and (ii) the denominator of which is the sum of all Allowed Class 9 Unsecured Claims as of such date.

69.　　**"Reorganized Debtor"** shall mean Jesus Morales Miranda and Dorcas Nazario Rivera as they emerge from their Bankruptcy Case and is created on the Effective Date.

70.　　**"Retained Actions"** shall mean all suits, Claims, Causes of Action or other litigation rights available to the Debtor that are being retained by the Reorganized Debtor, including any Avoidance Actions.

71.　　**"Rule or Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

72.　　**"Schedules"** shall mean the list of Assets and Liabilities which were filed by the Debtor with the Bankruptcy Court, as they may be amended from time to time pursuant to Bankruptcy Rules 1007 and 1009, respectively.

73.　　**"Secured Claim"** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtor or Reorganized Debtor shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

74.　　**"Security Interest"** shall mean "security interest" as defined in 11 U.S.C. § 101(51).

75.　　**"Tax Claim"** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

76.　　**"Unclaimed Property"** shall mean any cash, or any other Property of the Debtor or Reorganized Debtor unclaimed for a period of six (6) months after any Distribution.

77.　　**"Unimpaired Class"** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

78.　　**"Unsecured Claim"** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

79.　　**"Unsecured Creditor"** shall mean a creditor holding an Allowed Unsecured Claim.

80.　　**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. §

581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for the District of Puerto Rico.

## ARTICLE III – CLASSIFICATION OF CLAIMS

A.      Introduction: A reorganization plan must place different types of claims and interests in separate classes and must specify the treatment given to each class. In this Bankruptcy Case, the Debtors' Plan contains:  eight (8) Classes of Secured Claims, one (1) Class of Unsecured Claims, one (1) Class of Equity Claims, and Unclassified Priority Unsecured Claims.  These Classes of Claims and Interests are explained below.

B.      Classification Rationale. All Claims and Interests are placed in the Classes as set forth below and the status of those Classes as impaired or unimpaired is also indicated below. A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in another Class to the extent that any portion of the Claim or Interest falls within the description of such other Class. A Claim or Interest is also placed in a  particular Class only  for  the purpose of  voting on, and receiving  distributions pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. To the extent there are not any Claims in a particular Class or not any votes cast in a particular Class, the Debtor has the right to eliminate such Class from  the  Plan, and to reclassify any Claims in such Class to another Class, consistent with the requirements of § 1122 of the Bankruptcy Code, without further Order of the Bankruptcy Court or approval from any Person or Entity.

C.      Unclassified Priority Tax Claims:  Pursuant to Section 507(a)(8) of the Bankruptcy Code, certain governmental tax claims may be deemed allowed priority claims in this case.  In this case, nor creditor has filed nor was any creditor scheduled with an Allowed Priority Unsecured Claim.

D.      Classified Claims: For purposes of this Plan, Claims and Interests are classified as follows:

1.      **Class 1 – Allowed Secured Claim of PRCI Loan CR., LLC, secured by Debtor's Primary Residence:**   Class 1 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Primary Residence.  PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11.  If allowed, PRCI will have an Allowed Class 1 Claim in the amount of $245,000.00.  PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility.  PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9.

2.      **Class 2 - Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Ave. Los Rosales #126 Property**.  Class 2 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Ave. Los Rosales #126 Property.  PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11.  If allowed, PRCI will have and Allowed Class 2 Claim will be in the amount of $160,000.00. PRCI has

also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9.

3.    **Class 3 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Calle Almendra #9 Property**. Class 3 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Calle Almendra #9 Property. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If Allowed, PRCI will have and Allowed Class 3 Claim in the amount of $80,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9.

4.    **Class 4 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Commercial Property**. Class 4 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Commercial Property. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If Allowed, PRCI will have an Allowed Class 4 Claim in the amount of $95,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9.

5.    **Class 5 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Vacant Lots Property**. Class 5 consists of the Allowed Secured Claim of PRCI, which arises from prepetition mortgage liens on four vacant lots owned by Debtor in Sector Manantiales (the "Vacant Land"). PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 5 Claim in the amount of $132,000. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9.

6.    **Class 6 – Allowed Secured Claim of CRIM**. Class 6 consists of the Allowed Secured Claim of CRIM ("CRIM") allegedly secured by the Debtor's real properties. CRIM filed Proof of Claim #2 with an alleged secured portion in the amount of $21,466.32.

7.    **Class 7 – Allowed Secured Claim of Hacienda**. Class 7 consists of the Allowed Secured Claim of Departamento de Hacienda ("Hacienda"), which is allegedly secured by the Debtor's real properties. Hacienda filed Proof of Claim #7 which alleges a secured portion in the amount of $5,711.05. If allowed as filed, it is projected that Hacienda's Allowed Class 7 Claim will be in the amount of $5,711.05.

8.    **Class 8 – Allowed Secured Claim of Oriental**. Class 8 consists of the Allowed Secured Claim of Oriental Bank ("Oriental"), which is allegedly secured by the Debtor's 2012 Toyota Highlander. Oriental filed Proof of Claim #6 in the amount of $6,821.14. If allowed as filed, it is projected that Oriental's Allowed Class 8 Claim will be in the amount of $6,821.14.

9.    **Class 9 -Allowed General Unsecured Claims**: Class 9 consists of: (a) the pre-petition unsecured claims against the Debtors, to the extent Allowed, if any, and (b) any other allowed claim which is deemed

partially or entirely unsecured. The Debtors' estimate that there will be approximately $23,047.04 in unsecured claims.

10. **Class 10 – Debtor's Equity**. Class 10 consists of the Debtor's equity interest in the assets of the Bankruptcy Estate.

## ARTICLE IV – TREATMENT OF ADMINISTRATIVE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY CLIAMS.

A. **Unclassified Claims**. Except as otherwise expressly provided for herein, the Debtors shall pay Ordinary Course Administrative Claims according to the existing terms in effect between the Debtors and the Holders of such Ordinary Course Administrative Expense Claims.

B. **Administrative Expense Claims**. All Administrative Expense Claims that are not Ordinary Course Administrative Expenses Claims, including professional Fee Claims, shall be paid 15 days after the later of (i) the Effective Date, (ii) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (iii) the date such Administrative Expense Claim becomes payable pursuant to any agreement between the Debtors or the Reorganized Debtors and the holder of such Administrative Expense Claim.

C. **United States Trustee Fees**. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely aid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE V – TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

| Class | Description | Insider | Impairment | Treatment |
|-------|-------------|---------|------------|-----------|
| 1 | **Class 1 – Allowed Secured Claim of PRCI Loan CR., LLC, as to Debtor's Primary Residence:** Class 1 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Primary Residence. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 1 Claim in the amount of $245,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Claims Allowed in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes | Debtors will satisfy the Class 1 Claim via monthly payments as follows:<br>(a) The Allowed Class 1 Claim will be in the amount of $245,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $1,685.32; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtor to maintain the Primary Residence duly insured at all relevant time. Debtors will also pay for CRIM taxes as they come due. Payments will commence on the first day of the first month following the Effective Date;<br>(f) PRCI shall release its lien as to the Primary Residence upon satisfaction of the Allowed Class 1 Claim. |

| | | | |
|---|---|---|---|
| 2 | **Class 2 - Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Ave. Los Rosales #126 Property**.  Class 2 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Ave. Los Rosales #126 Property PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11.  If allowed, PRCI will have and Allowed Class 2 Claim will be in the amount of $160,000.00.  PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility.    PRCI's Allowed Claim minus the cumulative Secured Claims Allowed in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | | Debtors will satisfy the Class 2 Claim via monthly payments as follows:<br>(a) The Allowed Class 2 Claim will be in the amount of $160,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $1,100.62; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtors will maintain the Ave. Los Rosales #126 Property duly insured at all relevant times.  Debtors will also pay for CRIM taxes as they come due.  Payments will commence on the first day of the first month following the Effective Date of the Plan;<br>(f) PRCI shall release its lien as to the Los Rosales #26 Property upon satisfaction of the Allowed Class 2 Claim. |

| 3 | **Class 3 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Calle Almendra #9 Property**. Class 3 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Calle Almendra #9 Property. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 3 Claim in the amount of $80,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Claims Allowed in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes | Debtors will satisfy the Class 3 Claim via monthly payments as follows:<br>(a) The Allowed Class 3 Claim will be in the amount of $80,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $550.31; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtors will maintain the Calle Almendra #9 Property duly insured at all relevant times. Debtors will also pay for CRIM taxes as they come due.<br>(f) Payments will commence on the first day of the first month following the Effective Date of the Plan;<br>PRCI shall release its lien as to the Calle Almendra #9 Property upon satisfaction of the Allowed Class 3 Claim. |

| 4. | **Class 4 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Commercial Property**. Class 4 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Commercial Property.  PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11.  If allowed, PRCI will have and Allowed Class 4 Claim will be in the amount of $95,000.00.  PRCI has been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility.  PRCI's Allowed Claim minus the cumulative Secured Claims Allowed in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes. | Debtors will satisfy the Class 4 Claim via monthly payments as follows:<br>(a)   The Allowed Class 4 Claim will be in the amount of $95,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $653.49; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtors will maintain the Commercial Property duly insured at all relevant times.  Debtors will also pay for CRIM taxes as they come due.  Payments will commence on the first day of the first month following the Effective Date of the Plan;<br>(f) PRCI shall release its lien as to the Commercial Property upon satisfaction of the Allowed Class 4 Claim. |

| | | | | |
|---|---|---|---|---|
| 5. | **Class 5 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Vacant Lots Property.** Class 5 consists of the Allowed Secured Claim of PRCI, which arises from prepetition mortgage liens on four vacant lots owned by Debtor in Sector Manantiales (the "Vacant Land"). PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 5 Claim in the amount of $132,000. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5, all secured claims relate to the same loan facility. PRCI's Allowed Claim minus the cumulative Secured Claims Allowed in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes | Debtors will satisfy the Class 5 Claim via monthly payments as follows: <br>(a) The Allowed Class 5 Claim will be in the amount of $132,000.00; <br>(b) Payments will be amortized over 240 months (20 years); <br>(c) Yearly Rate of Interest: 5.50%; <br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $908.01 and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan; <br>(e) Debtors will also pay for CRIM taxes as they come due; <br>(f) Payments will commence on the first day of the first month following the Effective Date of the Plan; <br>(g) Debtors may sale any lot at any time and PRCI will release such lot from its lien subject to Debtor's payment of 100.00% of net proceeds of such sale to Principal of the Allowed Class #5 Claim. |
| 6 | **Allowed Secured Claim of CRIM.** Class 6 consists of the Allowed Secured Claim of CRIM ("CRIM") allegedly secured by the Debtor's real properties. CRIM filed Proof of Claim #2 with an alleged secured portion in the amount of $21,466.32. | No | Yes | Debtors shall satisfy the Allowed Class 6 Claim via forty-eight (48) monthly payments in the amount of $499.22. The Allowed Class 6 Claims shall be amortized over 48 months and payable at a yearly interest rate equal to 5.50%. Payments shall commence on the first day of the 13th month following the Effective Date of the Plan. |

| | | | | |
|---|---|---|---|---|
| 7. | **Class 7 – Allowed Secured Claim of Hacienda.**<br><br>Class 7 consists of the Allowed Secured Claim of Departamento de Hacienda ("Hacienda"), which is allegedly secured by the Debtor's real properties. Hacienda filed Proof of Claim #7 which alleges a secured portion in the amount of $5,711.05. If allowed as filed, it is projected that Hacienda's Allowed Class 7 Claim will be in the amount of $5,711.05. | No | Yes | Debtors shall satisfy the Allowed Class 7 Claim via forty-eight (48) monthly payment in the amount of $132.82. The Allowed Class 7 Claims shall be amortized over 48 months and payable at a yearly interest rate equal to 5.50%. Payments shall commence on the first day of the 13th month following the Effective Date of the Plan. |
| 8. | **Class 8 – Allowed Secured Claim of Oriental.**<br><br>Class 8 consists of the Allowed Secured Claim of Oriental Bank ("Oriental"), which is allegedly secured by the Debtor's 2012 Toyota Highlander. Oriental filed Proof of Claim #6 in the amount of $6,821.14. If allowed as filed, it is projected that Oriental's Allowed Class 8 Claim will be in the amount of $6,821.14. | | | Debtors will satisfy the Class 8 Claim via the continuance of monthly payments based upon the same terms and conditions as existed pre-petition. Payments under the Plan as to Class 8 will commence on the first day of the second month following the Effective Date of the Plan. Payments are estimated to be in the amount of $423.13 |

| 9. | **Allowed General Unsecured Claims**:<br><br>Class 9 consists of: (a) the pre-petition unsecured claims against the Debtor, to the extent Allowed (estimated amount of $23,000.00), if any, and (b) any other allowed claim which is deemed partially or entirely unsecured (PRCI's, estimated amount $427,000.00). The Debtors' estimate that there will be approximately $450,000.00 in unsecured claims. | No | Yes | The Allowed Class 9 General Unsecured Claims, if any, will be satisfied via a cash distribution estimated at $12,000.00. This represents a distribution in excess of 2.5%. Distributions will be made on a monthly basis commencing on the 1st day of the 61st month following the Effective Date of the Plan and continue thereafter to the 120th month. Monthly payments are estimated to be in the approximate amount of $200.00. |
| 10. | **Class 10 – Debtor's Equity.**<br>Class 10 consists of the Debtor's equity over Property of the Estate. | No | No | The Debtors will inject, no later than seven (7) from the Effective Date of the Plan, $1,000.00 of non-estate assets[1] in the form of "New Value" in exchange for retention of their interest in the property of the estate. |

## ARTICLE VI – ACCEPTANCE OR REJECTION OF THE PLAN

A. **Impaired Class Entitled to Vote**. Holders of Claims in Classes 1 through 9 are impaired and are entitled to vote to accept or reject the Plan. Class 10 is not impaired and not entitled to vote.

B. **Classes Not Entitled to Vote**. Holders of Claims in Class 10 (Equity) are not impaired and not entitled to vote.

C. **Acceptance by an Impaired Class**. In accordance with section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if it is accepted by the Holders of at least two-thirds (2/3) in dollar amount and one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

D. **Modification to the Plan**. The Debtor reserves the right, in his sole discretion, to modify this Plan prior to the Effective Date to address and/or resolve any objections or obstacles to Confirmation. In particular, to the extent the Court determines that any of the terms or provision of this Plan violate applicable law or render the Plan non-confirmable, the Debtor reserves the right

---

[1] For example, exempt assets.

to modify such terms or provisions so as to make such terms and provisions conform to the Bankruptcy Code or other applicable law.

## ARTICLE VII – UNEXPIRED LEASES AND EXECUTORY CONTRACTS

A.      **Pre-Petition Contracts Deemed Accepted or Rejected**.  The Debtor rejects all executory contracts and leases, but for those specifically assumed in the attached **Exhibit A**, if any.   In absence thereof, the Debtor may elect to continue performing and/or leasing his rental units on a month to month basis.   Rejection hereunder shall result in the termination of all such executory contracts and leases and such contracts and leases shall not be enforceable against the Debtor, the Reorganized Debtor, or Property of the Debtor or Reorganized Debtor.

B.      **Post-petition Contracts and Leases**. All contracts and leases entered into by the Debtor after the Petition Date and remaining in effect on the Effective Date shall be deemed assigned to the Reorganized Debtor on the Effective Date.

C.      **Bar Date For Rejection Damages**.  If an executory contract or unexpired lease is rejected as of the Confirmation Date pursuant to this Plan, the non-Debtor party to the executory contract or lease may file a Proof of Claim for damages resulting from the rejection. Any such Proof of Claim must be filed with the Bankruptcy Court within 30 days after the Confirmation Date. Rejection Claims relating to any executory contract or unexpired lease, shall constitute Class 10 Claims to the extent they become Allowed Claims.

## ARTICLE VIII – MEANS OF IMPLEMENTATION

A.      **Funding of the Plan and Funds Generated During Chapter 11**.  The Plan will be funded by and through: (a) the New Value to be invested by the Debtor's on/or before the Effective Date of the Plan, (b) the Debtors' cash reserves as of the Effective Date of the Plan, and (c) the future cash flows generated by Debtors' business income.

B.      **Authorization**. From and after the Effective Date, the Reorganized Debtor shall take all steps and execute, file and record all documents necessary to effectuate the Plan, and shall be authorized to do so upon entry of the Confirmation Order.  The following provisions shall constitute the principal means for the implementation of the Plan.

C.      **Satisfaction of Claims**.  Upon the payment of the amount owing to each Holder of an Allowed Claim, as required herein, the Reorganized Debtor shall have no further obligations under this Plan to the Holders of Allowed Claims. At such time, the Reorganized Debtor may, but is not required to do so, file a notice with the Bankruptcy Court stating that one or more Claims have been fully satisfied in accordance with the Plan and such notice shall be deemed to be a satisfaction of judgment.

D.      **Injunction.**   Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest in any asset of the Debtor or otherwise enforcing claims against the Debtor and their assets except in a manner provided for under the terms and conditions of this Plan.  Such injunction shall not affect the right of any holder of an Allowed Secured Claim to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under this Plan as permitted by the

Plan. This injunction shall remain in full force and effect to prevent said actions until all distributions have been made in accordance with the terms and conditions of the Plan.

**E.** **Post Effective Date Operations and Management.**

      **1.** **Operations.** The Reorganized Debtor shall conduct business after the Effective Date. Except as otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor may be operated without any limitation or restriction by, and without any requirement to comply with, the Bankruptcy Code, Bankruptcy Rules or Guidelines of the Office of the United States Trustee.

      **2.** **Powers and Duties of the Reorganized Debtor to Implement the Plan.** From and after the Effective Date, the Reorganized Debtor shall implement this Plan, fulfilling its duties and obligations and exercising its rights and powers under this Plan and conducting any activity consistent with this Plan and Orders entered in the Reorganization Case and shall do so without further action, consent or approval of its Board, officers, or managers, and in connection therewith shall be vested with authority and responsibility for, among other things:

      a. Prosecuting the Retained Actions for the benefit of parties in interest, including reviewing, objecting to, negotiating, settling or otherwise compromising any Retained Action;

      b. Executing agreements, instruments, and other documents;

      c. Objecting to and resolving Disputed Claims;

      d. Making distributions and paying expenses of administering Plan;

      e. Employing and compensating professionals;

      f. Exercising the rights, power and authority of the Reorganized Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law;

      g. Furnishing such information regarding administration of the Plan as may be requested by parties in interest unless otherwise ordered by the Court; and

      h. Closing the Reorganization Case.

      **3.** **Post-confirmation Transactions.** Nothing in this Plan or the Bankruptcy Code shall impair or prevent the Reorganized Debtor from entering into a financing transaction, merging with another Entity, selling substantially all of its assets or otherwise engaging in a transaction that further restructures the Reorganized Debtor (a "***Post-Confirmation Transaction***") without any further authorization from the Bankruptcy Court or any other Person, provided that the Reorganized Debtor or the Person that engages in a Post-Confirmation Transaction with the Reorganized Debtor, as applicable, shall be obligated to perform the Reorganized Debtor's obligations hereunder and, in connection therewith, make the distributions required hereunder to Holders of Allowed, including, but not limited to, prepaying any Classes of Claims without penalty.

4.     **Standing**.  From and after the Effective Date and continuing through the date on which a final decree closing the Bankruptcy Case is entered pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022 (or, if the Bankruptcy Case is re-opened, the date on which it is closed again), the Reorganized Debtor shall possess the rights of a party in interest pursuant to § 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to this Bankruptcy Case or the Reorganized Debtor.

5.     **Post-Confirmation Professionals**.  The Reorganized Debtor may retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such professionals without approval of the Bankruptcy Court.   Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and, specifically, may include, without limitation, the Law Firm and the Financial Advisory Firm.  Professionals so retained also need not make any disclosures pursuant to Bankruptcy Rules 2014 and 2016.   Notwithstanding the foregoing, professionals retained by the Debtor in the Bankruptcy Case shall be entitled to compensation for services rendered prior to the Effective Date only in accordance with §§ 330 and 331 of the Bankruptcy Code and any applicable Bankruptcy Rules or Local Rules.

6.     **Vesting of the Debtors' Estate** . On and as of the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code all remaining Property of the Estate, including, without limitation, all rights of the Debtor under this Plan, the Confirmation Order, and all other orders entered by the Bankruptcy Court in the Bankruptcy Case on or prior to the Effective Date, and all books and records related to the estate, shall be transferred to and vest in the Reorganized Debtor and be deemed contributed thereto, free and clear of all liens, encumbrances, claims, rights and setoffs, except as expressly set forth in this Plan and the Confirmation Order. Nothing in this section of the Plan, however, shall preclude payment of statutory fees under section 1930 of Title 28 of the United States Code to the extent unpaid on the Effective Date. The Debtor is hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of its Property to the Reorganized Debtor.

7.     **Preservation of Retained Actions**. Except as otherwise provided in th Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall transfer the Retained Actions to the Reorganized Debtor, including, without limitation, all Avoidance Actions. The Reorganized Debtor may, in its sole discretion, pursue or refrain from pursuing the Retained Actions, as appropriate.

8.     **Closing the Reorganization Case**. As promptly as appropriate, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Bankruptcy Case.

9.     **Additional Provisions**

1. Procedures for Resolving Disputed Claims

a.     Prosecution of Objections to Claims. Unless otherwise ordered by Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor and Reorganized Debtor shall have the exclusive right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that, the Debtor had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights to setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.      Estimation of Claims. Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of an appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such  Claim.

c.      Cumulative Remedies. In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity interest for purposes related to allocations, Distributions, and voting under the Plan.

d.      Disallowance of Certain Claims and Interests. According to the Plan, all Claims held by Entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due Debtor by that Entity are turned over to Debtor.

e.      Controversy Concerning Impairment. If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after  notice  and  a  hearing,  shall  determine  such

controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## IX. CLAIMS AND DISTRIBUTIONS

**A.** **Disbursing Agent.** Mr. Jesus Morales Miranda and Dorcas Nazario Rivera shall be the disbursing agents for Plan Payments.

**B**. **Manner of Payment**. Any payment of Cash made under this Plan may be either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

**C.** **Transmittal of Distributions to Parties Entitled Thereto.** All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor' books and records.

**D.** **Distribution of Unclaimed Property.** Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

**E.** **Fractional Cents; Multiple Distributions.** Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as Unclaimed Property under the Plan.

**F.** **Compliance with Tax Requirements.** In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any government unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any government unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of the first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the

Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the entity receiving the distribution.

## X – CONDITIONS TO EFFECTIVENESS

a. **Effective Date**.  The Effective Date shall not occur until all of the following conditions have been satisfied:

      1.     The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

      2.     Inclusion of the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, except as set forth in Article V, from interfering with Reorganized Debtor's post-petition business activities, and from commencing, enforcing, perfecting, setting off any Claim, judgment, or Interest against the Debtor, or any property thereof, or against any of the Debtor's transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or
Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit
from enforcing such governmental unit's police or regulatory power.

      3.     All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtor unless the Debtor has waived this requirement in writing.

b. **Notice of Effective Date**. Upon the satisfaction or waiver of each of the foregoing conditions, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

## XI - EFFECTS OF CONFIRMATION

### A.    Discharge and Injunction

      1.     <u>Discharge.</u> Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

2.     Injunction. As part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, Liens, encumbrances rights and Interest in, to or against the Debtor, the Property and any of the Reorganized Debtor's assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between Debtor and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Reorganized Debtor; provided, however, that such injunction shall not apply to any Claim asserted against the Debtor by a claimant based upon a default by the Debtor in performance of their obligations to the claimant under the Plan.

## B.     Retention of Jurisdiction

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case with respect to the following matters:

1.     All objections to the  allowance of Claims and Interests and the compromise of Claims;

2.     All applications for allowance of compensation and reimbursement of out- of-pocket expenses of professionals retained in the Debtor's Bankruptcy Case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.     Any adversary proceedings or contested matters brought by the Debtor, including but not limited to the Causes of Action, the proceedings then pending or thereafter brought pursuant to Sections 544, 545, 547, 548, 549, and 550 of the Code;

4.     All controversies and disputes arising under or in connection with to Plan;

5.     The enforcement and interpretation of the provisions of the Plan;

6.     To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.     Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.        All Claims arising from the rejection of any executory contract or lease;

9.        Such other matters as may be provided for in the Code or the Plan;

10.      To protect the property of the Estate from adverse claims or interference inconsistent with the Plan; and

11.      To ensure that Distributions are accomplished, as provided herein, and to resolve any dispute concerning the right of any person to a Distribution hereunder, under applicable law, or under a contract or agreement.

## C.      **Amendments to the Plan**

1.      <u>Right to Amend</u>. The Debtor reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

2.      <u>Authority to Effectuate the Plan.</u> Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

3.      <u>Post-Confirmation Status Report</u>. Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtor will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post- confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

**D.     Notices.**     All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States Mail to the following:

To Debtor's Counsel at:

**The Batista Law Group, PSC**
c/o Jesús E. Batista Sánchez, Esq.
P.O. Box 191059
San Juan, PR 00919
(787) 620-2856 (787)
625-0259

Respectfully submitted,


/s/Jesus Morales Miranda
Jesus Morales Miranda

/s/ Dorcas Nazario Rivera
Dorcas Nazario Rivera


Counsel for Debtors:
/s/Jesús E. Batista Sánchez, Esq.
**The Batista Law Group, PSC** P.O.
Box 191059
San Juan, PR. 00919
Ph: (787) 620-2856
Fax: (787) 625-0259