**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF PUERTO RICO**


IN RE:                                                          CASE NO: 18-03190-ESL

JESUS MORALES MIRANDA
DORCAS NAZARIO RIVERA                                          CHAPTER 11


        DEBTOR (S)
_____/


<u>**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**</u>
<u>**DATED MARCH 18, 2019**</u>

Jesús Enrique Batista Sánchez, Esq.
**The Batista Law Group, PSC**
P.O. Box 191059
San Juan, PR 00919
(787) 620-2856

## 1. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Jesus Morales Miranda and Dorcas Nazario Rivera. This Disclosure Statement contains information about the Debtors and describes the Small Business Plan of Reorganization (the "Plan") filed by the Debtors on March 18, 2019. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages 7 through 9 of this Disclosure Statement. General Unsecured Creditors are classified in Class 10. Unsecured creditors are projected to receive a distribution of $12,000.00 which equals approximately a 2.50 % distribution of their Allowed Claims[1]. Distributions to Unsecured Creditors will be made via sixty (60) monthly payments of $200.00 commencing on the first day of the 61st month following the Effective Date of the Plan.

### A. Purpose of This Document

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtors believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan.*

---

[1] See, Chart of Claims attached hereto as Exhibit F.

On _____ a Hearing shall be held before the Honorable Enrique Lamoutte at the United States Bankruptcy Court, District of Puerto Rico, José V. Toledo Federal Building & US Courthouse 300 Recinto Sur Street, Courtroom #_____, San Juan, Puerto Rico 00901 to determine whether to finally approve this Disclosure Statement and confirm the Plan (the "Confirmation Hearing").   The Court will fix the last day for the filing and serving of written objections to the disclosure statement and confirmation of the plan.

2. *Deadline For Voting to Accept or Reject the Plan.*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to The Batista Law Group, PSC., PO Box 191059, San Juan, PR 00919.  See section IV. A. below for a discussion of voting eligibility requirements.

Your ballot must be received before _____ at 5:00 p.m EST. or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan.*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtors by _____.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

> **The Batista Law Group**, **PSC**
> Jesús E. Batista Sánchez, Esq.
> PO Box 191059
> San Juan, PR 00919
> Tel:    (787)  620-2856
> Fax:    (787)  625-0259
> Email: jeb@batistasanchez.com

C. **Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.  The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.  Objections to the adequacy of this Disclosure Statement may be filed until _____.*

## II. BACKGROUND

### A. Description and History of the Debtors' Business

The Debtors are individuals. The Debtors generate income from three sources: (a) business income generated by the Debtor's wholly owned business, Ferreterias Morales; (b) the Debtor's professional services income that results from Mr. Morales' construction work, and (c) rental income generated by the Debtors rental properties. In addition, the Debtors own four unimproved vacant pieces of land which they are presently marketing for sale.

### B. Insiders of the Debtors

The "insider" of Debtors are Mr. Jesus Morales Miranda and Mrs. Dorcas Nazario Rivera who, combined, own 100.00% of the shares/equity of the Debtor and/or property of the Estate.

### C. Management of the Debtors Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed (and after), the officers, directors, managers or other persons in control of the Debtors (collectively the "Manager") were the Debtors themselves.

After the Effective Date, the directors, officers, and voting trustees of the Debtors, any affiliate of the Debtors participating in a joint Plan with the Debtors, or successor of the Debtors under the Plan (collectively the "Post Confirmation Managers"), will also be Mr. Jesus Morales Miranda. Further explanation of the responsibilities and compensation of these Post Confirmation Managers are described in Section III. D. below of this Disclosure Statement.

### D. Events Leading to Chapter 11 Filing

The Bankruptcy Petition in this case was filed because the Debtor's real properties were subject to foreclosure. This, in turn, as a result of the pre-Maria decline in the general Puerto Rico economy with a specific focus in the construction industry. Because of the above, the Debtor's Ferreteria business as well as the construction work performed by the Debtor himself saw significant declienes. This in turn impacted the Debtor's ability to keep his mortgage payments up-date and the default which ensued lead to the filing of this case.

### E. Significant Events During the Bankruptcy Case

On June 5, 2018 the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Since that time, the Debtors have operated their financial affairs as Debtors and Debtors in Possession.

The Debtor have closed all pre-petition bank accounts. All Monthly Operating Reports, through the month ending January 2019, have been filed. Upon information and belief, Quarterly Fees payable to the United States Trustee have been paid.

The 341 Meeting of Creditors was held on July 13, 2018 at 9:00 AM. Since, on July 16, 2 0 1 8 (Dk. #23) this Court entered an Order approving Jesus E. Batista Sanchez, Esq., as Counsel of Record.

### F. **Projected Recovery of Avoidable Transfers.**

At this juncture, the Debtors have not identified pre-petition transfers which are subject to avoidance. The Debtors' investigation with respect to pre-petition transfers is on-going. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtors may seek to avoid such transfer.

### G. **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan. Unless otherwise ordered by this Honorable Court, any objection to a proof of claim (i.e., "Claim Objections") will be filed on or before the 30th following the Effective Date of the Plan.

### H. **Current and Historical Financial Conditions**

The identity of the estate's assets is listed in **Exhibit D**. As of the Petition Date, the Debtors' Assets and Liabilities reflected assets with a book value in the amount of $888,942.06 and Liabilities in the amount of $560,020.54.

As of the date of the filing of this Disclosure Statement, the Debtors' primary assets were the Debtor's real properties. The Debtors real properties were recently appraised, with estimated values as follows: (a) the Bo. Maguelles Carr 664 KM 1.5, Barecoloneta Property, a/k/a the "Primary Residence" has an estimated value of $245,000.00; (b) the Ave. Los Rosales #126, Parcelas Imberry, Barceoloneta, PR (the "Ave. Los Rosales #126 Property") has an estimated value of $160,000.00; (c) the Calle Almendra #9 Parc. Imberry, Barceloneta, PR (the "Calle Almendra #9 Property") has an estimated value of $80,000.00; (d) the Ave. Los Rosales, #208, Parceolas Imberry, Barceoloneta, PR (the "Commercial Property") has an estimated value of $95,000.00; and (e) the vacant lots located at Sect. Manantiales, BO. Sabana Hoyos, Areceibo, PR (the "Vacan Land") has a combined[1] estimated value of $132,000.00. In addition, the Debtor also scheduled vehicles with an estimated value of $27,700.00 and business related personal property with an estimated value of $28,932.06.

The Debtors primary liabilities correspond to secured claims against the Debtors real properties in the estimated amount of $560,000.00 and Unsecured Claims of $450,000. *See* **Exhibits D and E**.

---

[1] There are four vacant lots with values of $26,000.00; $28,000.00, $28,000.00, and $50,000.00.

III.  **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A. **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B. **Unclassified Claims**

Certain types of claims are automatically entitled to a specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent *has not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Less than $1,000.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the Court, and expected to be owed as of the Effective Date of the Plan. | $5,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |

| | | |
|---|---|---|
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan |
| **Total** | $6,000.00 | |

C. **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a Class 9 General Unsecured Claim, unless the creditor's claim is secured only by collateral which is the Debtors' property.

| Class | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 1 | **Class 1 – Allowed Secured Claim of PRCI Loan CR., LLC, as to Debtor's Primary Residence:** Class 1 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Primary Residence. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 1 Claim in the amount of $245,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes | Debtors will satisfy the Class 1 Claim via monthly payments as follows:<br>(a) The Allowed Class 1 Claim will be in the amount of $245,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $1,685.32; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtor to maintain the Primary Residence duly insured at all relevant time. Debtors will also pay for CRIM taxes as they come due. Payments will commence on the first day of the first month following the Effective Date;<br>(f) PRCI shall release its lien as to the Primary Residence upon satisfaction of the Allowed Class 1 Claim. |

| 2 | **Class 2 - Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Ave. Los Rosales #126 Property**. Class 2 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Ave. Los Rosales #126 Property PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have and Allowed Class 2 Claim will be in the amount of $160,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | YES | Debtors will satisfy the Class 2 Claim via monthly payments as follows:<br>(a) The Allowed Class 2 Claim will be in the amount of $160,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $1,100.62; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtors will maintain the Ave. Los Rosales #126 Property duly insured at all relevant times. Debtors will also pay for CRIM taxes as they come due. Payments will commence on the first day of the first month following the Effective Date of the Plan;<br>(f) PRCI shall release its lien as to the Ave. Los Rosales #126 Property upon satisfaction of the Allowed Class 2 Claim. |
|---|---|---|---|---|

| 3 | **Class 3 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Calle Almendra #9 Property**. Class 3 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Calle Almendra #9 Property. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 3 Claim in the amount of $80,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes | Debtors will satisfy the Class 3 Claim via monthly payments as follows:<br>(a) The Allowed Class 3 Claim will be in the amount of $80,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $550.31; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtors will maintain the Calle Almendra #9 Property duly insured at all relevant times. Debtors will also pay for CRIM taxes as they come due.<br>(f) Payments will commence on the first day of the first month following the Effective Date of the Plan;<br>(g) PRCI shall release its lien as to the Calle Almendra #9 Property upon satisfaction of the Allowed Class 3 Claim. |

| 4. | **Class 4 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Commercial Property**. Class 4 consists of the Allowed Secured Claim of PRCI Loan CR., LLC., ("PRCI"), which arises from a pre-petition mortgage lien on Debtor's Commercial Property. PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have and Allowed Class 4 Claim will be in the amount of $95,000.00. PRCI has also been scheduled with Secured Claims in Classes 1, 2, 3, 4, and 5. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes. | Debtors will satisfy the Class 4 Claim via monthly payments as follows:<br>(a) The Allowed Class 4 Claim will be in the amount of $95,000.00;<br>(b) Payments will be amortized over 240 months (20 years);<br>(c) Yearly Rate of Interest equal to 5.50%;<br>(d) Term: (i) fifty-nine (59) monthly payments in the amount of $653.49; and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan;<br>(e) Debtors will maintain the Commercial Property duly insured at all relevant times. Debtors will also pay for CRIM taxes as they come due. Payments will commence on the first day of the first month following the Effective Date of the Plan;<br>(h) PRCI shall release its lien as to the Commercial Property upon satisfaction of the Allowed Class 4 Claim. |

| 5. | **Class 5 – Allowed Secured Claim of PRCI LOAN CR., LLC ("PRCI") secured by Debtor's Vacant Lots Property.** Class 5 consists of the Allowed Secured Claim of PRCI, which arises from prepetition mortgage liens on four vacant lots owned by Debtor in Sector Manantiales (the "Vacant Land"). PRCI filed Proof of Claims #3, 4, and 5 in the cumulative amount of $1,138,489.11. If allowed, PRCI will have an Allowed Class 5 Claim in the amount of $132,000. PRCI's Allowed Claim minus the cumulative Secured Allowed Claims in Classes 1, 2, 3, 4, and 5, respectively, shall be deemed an Allowed General Unsecured Claim in Class #9. | No | Yes | Debtors will satisfy the Class 5 Claim via monthly payments as follows: (a) The Allowed Class 5 Claim will be in the amount of $132,000.00; (b) Payments will be amortized over 240 months (20 years); (c) Yearly Rate of Interest: 5.50%; (d) Term: (i) fifty-nine (59) monthly payments in the amount of $908.01 and (ii) one (1) balloon payment of any remaining balance due on or before the last day of the sixtieth month following the Effective Date of the Plan; (e) Debtors will also pay for CRIM taxes as they come due; (f) Payments will commence on the first day of the first month following the Effective Date of the Plan; (g) Debtors may sale any lot at any time and PRCI will release such lot from its lien subject to Debtor's payment of 100.00% of net proceeds of such sale to Principal of the Allowed Class #5 Claim. |
| --- | --- | --- | --- | --- |
| 6 | **Allowed Secured Claim of CRIM.** Class 6 consists of the Allowed Secured Claim of CRIM ("CRIM") allegedly secured by the Debtor's real properties. CRIM filed Proof of Claim #2 with an alleged secured portion in the amount of $21,466.32. | No | Yes | Debtors shall satisfy the Allowed Class 6 Claim via forty-eight (48) monthly payments in the amount of $499.22. The Allowed Class 6 Claims shall be amortized over 48 months and payable at a yearly interest rate equal to 5.50%. Payments shall commence on the first day of the 13th month following the Effective Date of the Plan. |

| 7. | **Class 7 – Allowed Secured Claim of Hacienda.**<br><br>Class 7 consists of the Allowed Secured Claim of Departamento de Hacienda ("Hacienda"), which is allegedly secured by the Debtor's real properties. Hacienda filed Proof of Claim #7 which alleges a secured portion in the amount of $5,711.05. If allowed as filed, it is projected that Hacienda's Allowed Class 7 Claim will be in the amount of $5,711.05. | No | Yes | Debtors shall satisfy the Allowed Class 7 Claim via forty-eight (48) monthly payment in the amount of $132.82. The Allowed Class 7 Claims shall be amortized over 48 months and payable at a yearly interest rate equal to 5.50%. Payments shall commence on the first day of the 13th month following the Effective Date of the Plan. |
|---|---|---|---|---|
| 8. | **Class 8 – Allowed Secured Claim of Oriental.**<br><br>Class 8 consists of the Allowed Secured Claim of Oriental Bank ("Oriental"), which is allegedly secured by the Debtor's 2012 Toyota Highlander. Oriental filed Proof of Claim #6 in the amount of $6,821.14. If allowed as filed, it is projected that Oriental's Allowed Class 8 Claim will be in the amount of $6,821.14. | No | Yes | Debtors will satisfy the Class 8 Claim via monthly payments based upon the same terms and conditions as existed pre-petition. Payments under the Plan as to Class 8 will commence on the first day of the second month following the Effective Date of the Plan. Payments are estimated to be in the amount of $423.13 |

## 2. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. In this Case, Unsecured Claims are classified in Class #9. The following chart identifies the Plan's proposed treatment of the class of claims which contain general unsecured claims against the Debtors:

| Class | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 9 | **Allowed General Unsecured Claims**: Class 9 consists of: (a) the prepetition unsecured claims against the Debtor, to the extent Allowed (estimated amount of $23,000.00), if any, and (b) any other allowed claim which is deemed partially or entirely unsecured (PRCI's, estimated unsecured claim of $427,000.00). The Debtors' estimate that there will be approximately $450,000.00 in unsecured claims. | No | Yes | The Allowed Class 9 General Unsecured Claims, if any, will be satisfied via a cash distribution estimated at $12,000.00 or a 2.50 % distribution, on any Allowed Class 5 General Unsecured Claim. Distributions will be made on a monthly basis commencing on the 1st day of the 61st month following the Effective Date of the Plan and continue thereafter to the 120th month. Monthly payments are estimated to be in the approximate amount of $200.00. |

## 3. Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtors. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a Debtors, the Debtors is the equity interest holder.

In this Case, the Debtors' Equity is classified in Class #10. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | **Class 10 – Debtor's Equity:** Class 10 consists of the Debtor's equity in property of the Estate | Yes | Yes | The Debtors will inject, no later than seven (7) from the Effective Date of the Plan, $1,000.00 of non-estate assets in the form of "New Value" in exchange for retention of their interest in the property of the estate. |

D. **Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

The Plan establishes that the Plan will be funded from: (a) the "New Value" to be injected by the Debtor in the amount of $1,000.00 on or before the 7th day following the Effective Date of the Plan; (b) the cash reserves of the Debtors as of the date of Effective Date; and (c) the cash-flows generated by the Reorganized Debtors after the Effective Date; and (d) the secured claims in Classes 1 to 5 will be refinance and/or the real properties sold. The Debtors cash-flows consist of the business income generated by the Debtors from their Ferreteria, the professional services income generated by the Debtors from construction work, and the rental income generated by the Debtors. The Debtors will contribute its cash flows to fund the Plan commencing on the Effective Date of the Plan and continue to contribute through the date that Holders of Allowed Class 1 through Class 9 Claims receive the payments specified for in the Plan. The "New Value" will be funded from the liquidation of non-estate assets; for example, exempt property. The Debtor's Schedules presently show that the Debtor has over $35,000.00 in non-estate property (i.e., exempt assets) which would be available, as required, to be liquidated to fund the "New Value."

2. *Post-confirmation Management*

The Post-Confirmation Manager of the Debtor shall be Mr. Jesus Morales Miranda and Mrs. Dorcas Nazario Rivera.

E. **Risk Factors**

The proposed Plan has the following risks:

1. Income Risk Factor: Although the Debtors believes the Reorganized Debtors will be able to generate sufficient income subsequent to the Effective Date of the Plan to make the payments contemplated by the Plan, there is a risk that the income that is projected from the operation of the Debtors multiple business and/or the rental income will not be sufficient and thus the Debtors will not achieve the income necessary to enable it to make payments to Creditors.

F. **Executory Contracts and Unexpired Leases**

The Plan does not contemplate the Debtor assuming any executory contracts and/or unexpired leases. That said, the Debtor may continue and in fact expect to continue, renting their multiple rental properties on a month to month basis. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

Unless specifically listed and assumed under the Plan, all executory contracts and unexpired leases will be deemed rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is 60 Days from the Rejection of Such Agreement or any other later date set by the Court***. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G. *Tax Consequences of Plan*

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include, but are not limited to, the requirements that: (a) the Plan must be proposed in good faith; (b) at least one impaired class of claims must accept the plan, without counting votes of insiders; (c) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (d) the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that Classes 1 through 9 are impaired and that holders of claims in Classes 1 through 9 are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that the Equity Class, which is Class 10, is unimpaired and that holders of claims in Class 10, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtors has scheduled the claim on the Debtors's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated and/or such claim has been objected to; or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

> ***The deadline for filing a proof of claim in this case was October 11, 2018; and December 3, 2018 for governmental creditors. See, Dk. #5.***

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not Entitled** to Vote*

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram-down" on non-accepting classes, as discussed later in Section IV - B.2.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a 'cram-down plan'. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit B**.

This analysis of the Debtors assets and liabilities reveals that the distribution under the Plan, estimated at no less than $12,000.00 is much larger than the distribution unsecured creditors would receive via a hypothetical liquidation of the Debtors assets.

D. **Feasibility**

The Court must also find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtors will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The Debtors estimates that at the time of an Order of Confirmation, which for purposes of this Disclosure Statement is estimated at some time around May 2019, the Debtors will have in excess of $5,000.00 in liquid assets to fund the payments due on the Effective Date of the Plan. A table showing the projected amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as **Exhibit C.**

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided a 5-year Cash Flow Projection, which is attached as **Exhibit C**. Here, the Debtors' post confirmation projected cash-flows demonstrate the sustained ability to continue to make payments on the claims reorganized through the Plan in addition to all other household payments and expenses of the Debtors. Moreover, the Debtor projects that on or before the 60th month following the Effective Date of the Plan the Debtors – as a result of principal reduction and an increase in the value of the real properties – the Debtor will be in a position to sell and/or refinance the claims in Classes 1 through 5 in order to satisfy the Balloon Payments referenced therein. This contemplation is also reflected in Year #5 of the Projections.

Accordingly, from the projected Effective Date of the Plan (projected May of 2019 through May of 2024 (i.e., 5-years), the Debtors projects positive cash-flows which serve as evidence the feasibility of the Debtors' Plan.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V. EFFECT OF CONFIRMATION OF PLAN

### A.  DISCHARGE OF DEBTORS

Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B. **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C. **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully Submitted,

/s/ Jesus Morales Miranda
Jesus Morales Miranda

/s/ Dorcas Nazario Rivera
Dorcas Nazario Rivera

Counsel for Debtors:
/s/Jesús E. Batista Sánchez, Esq.
**The Batista Law Group, PSC**
P.O. Box 191059
San Juan, PR. 00919
Ph: (787) 620-2856
Fax: (787) 625-0259